UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                              CRIMINAL NO. 3:21-CR-17-DPJ-LGI

JOSHUA DRUID BRYAN AND
REGAN EMILY BRYAN

ORDER

This criminal case is before the Court on the Government's motion in limine to admit evidence [120] and Defendant Regan Emily Bryan's motion to suppress that same evidence [124]. The Government also seeks a ruling on portions of Regan's interviews that might raise *Bruton* issues for Co-Defendant Joshua Bryan. That portion of the motion is taken under advisement. Otherwise, the Government's motion is granted; Regan Bryan's motion is denied. Regan's motions for extensions [121, 122, 123] are granted.

I.      Background

Regan Bryan and her brother Joshua Bryan face three charges related to an alleged murder-for-hire plot. *See* Superseding Indictment [104]. The Government claims that after receiving a tip that Defendants planned to kill their stepfather (EH), agents from Alcohol, Tobacco, Firearms, and Explosives (ATF) used an undercover agent and a cooperating witness to arrange a fake hit. On January 8, 2021, the agents faked the murder and arrested Regan and Joshua. Regan was well advised of her *Miranda* rights—including the right to counsel—and signed a waiver. But she says the agents continued questioning her when she later invoked the right to counsel. Def.'s Mot. [124] at 1.

II.       Standards

The Government filed a permissive motion in limine seeking to admit Regan's recorded interview.  "It is well-established that motions in limine may be used to secure a pretrial ruling that certain evidence is admissible." *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, No. 3:11-CV-58-CWR-FKB, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012).  An order granting a motion in limine does not preclude the losing party from revisiting the issue at trial, outside the jury's presence.  *See El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 3715836, at *2 n.1 (S.D. Miss. Aug. 3, 2018).

Regan's motion seeks to suppress evidence.  "[O]n a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [her] constitutional rights. . . .  There are situations, however, where the burden shifts to the government." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) (citing *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993)).  Relevant in this case, "if a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).

As to Regan's motion, she requests an evidentiary hearing "[t]o the extent the Court determines there are any factual disputes raised by the government's response or the evidence."  Def.'s Mot. [124] at 4.  "[A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983).  Such hearings are "designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought." *Id.* at 738.  Here, the

2

parties base their motions on what happened during Regan's January 8, 2021 interview. That interview was videotaped and transcribed, and the Court has reviewed both. The video and transcript are the best evidence of what transpired, and Regan has identified no additional witnesses or evidence that might create a factual dispute. The Court therefore finds a hearing unnecessary.

III.     Analysis

Regan says the federal agents violated her Fifth and Fourteenth Amendment rights when they continued the interrogation after she asked for an attorney. Def.'s Mot. [124] at 1.

> In *Miranda v. Arizona*, 384 U.S. 436 . . . (1966), the Supreme Court determined that "the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481–82 . . . (1981). "[I]f the accused indicates in any manner that he wishes to remain silent or to consult an attorney, interrogation must cease, and any statement obtained from him during interrogation thereafter may not be admitted against him at his trial." *Fare v. Michael C.*, 442 U.S. 707, 709 . . . (1979) (citing *Miranda*, 384 U.S. at 444–45 . . .). Not only must the current interrogation cease, but as the Supreme Court established in *Edwards v. Arizona*, law enforcement may not re-approach the suspect for further questioning until a lawyer has been made available. *See Edwards*, 451 U.S. at 484 . . . ("[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."); *see also McNeil v. Wisconsin*, 501 U.S. 171, 176 . . . (1991) (describing *Edwards* as having "established a second layer of prophylaxis for the *Miranda* right to counsel").

*United States v. Wright*, 777 F.3d 769, 773–74 (5th Cir. 2015).

"A suspect in custody may waive the effectuation of his *Miranda* rights if the statement was made 'voluntarily, knowingly and intelligently.'" *United States v. Fernandez*, 48 F.4th 405, 411 (5th Cir. 2022) (quoting *Miranda*, 384 U.S. at 444). And "[i]n evaluating voluntariness, 'the finder of fact must examine the surrounding circumstances and the entire course of police

conduct with respect to the suspect.'" *Id.* (quoting *Oregon v. Elstad*, 470 U.S. 298, 318 (1985)). "[A] statement is involuntary . . . if the tactics employed by law enforcement officials constitute a Fifth Amendment due process violation and are so offensive to a civilized system of justice that they must be condemned." *Id.* (quoting *United States v. Lim*, 897 F.3d 673, 692 (5th Cir. 2018)).

There are two important limitations to these rights. First, "[i]n the context of invoking the *Miranda* right to counsel, . . . a suspect must do so 'unambiguously.'" *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the Supreme Court's] precedents do not require the cessation of questioning." *United States v. Carrillo*, 660 F.3d 914, 922 (5th Cir. 2011) (quoting *Davis*, 512 U.S. at 459). Second, "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*." *Id.* at 923 (quoting *Edwards*, 451 U.S. at 484–85) (emphasis added).

In this case, the interviewing agents started a textbook interrogation. They told Regan from the beginning that she was arrested and that this was a custodial interview. They repeatedly advised her of her rights—including the right to counsel—and told her she could stop at any time or decline to answer anything that made her uncomfortable. They even stopped her from talking when she volunteered information before being *Mirandized*. They then read her her rights and had her sign and initial a waiver that acknowledged its voluntariness. During the questioning, they reminded Regan of her rights several times, gave her water, gave her tissues when she cried,

4

kept their voices calm, and never touched or otherwise threatened her. It is also noteworthy that Regan holds a master's degree and stated a few times that she knew her rights and how things worked. Throughout the interview, Regan frequently stated that she wanted to talk to the agents. Her statements were voluntary.

Regan did, however, mention an attorney a few times and now says agents "ignored [her] request for counsel and continued their interrogation" on three occasions. Def.'s Mot. [124] at 2. In the first reference, Regan asked the agents,

> If I get an attorney can I still help you all? Or is that like giving up, I don't want to . . .
>
> . . . .
>
> [M]y mom said always have an attorney and I just, I don't know if she would tell me to right now.
>
> . . . .
>
> And I don't, I don't, I'm not helping and I don't want . . . .

Tr. [126-1] at 167–68. As noted, "a suspect's ambiguous reference to counsel is not enough to trigger the requirement that police must immediately stop questioning the suspect." *Carrillo*, 660 F.3d at 922–24 (holding that saying "I wish I had a lawyer right here" was insufficient). This passage is too ambiguous to stop the interrogation.

The second statement is more complicated. After around two hours of questioning, the agents offered a pretext, telling Regan that the "hitman" was saying it was a murder-for-hire plot (referring in reality to the undercover agent). Regan responded, "[I]f he's saying all that, yeah, I want an attorney." Tr. [126-1] at 173. Had she stopped there, she would have a better argument. She didn't. Before the agents asked her anything else, she stated, "I don't want that, I want to help you." *Id.* at 174.

5

Special Agent Parton nevertheless said, "[Y]ou [can] definitely have an attorney, but we want you to know one last thing." *Id.* Regan interrupted, and the two spoke over each other. Regan then said,

> I want to know, I want to know that I want to talk to you guys and I want to do the things, but I'm—
>
> . . . .
>
> That what I was getting, they know where I live.

*Id.* Her desire to "know" refers to whether EH had been killed (something she repeatedly asked throughout the first half of the interview). And the "where I live" comment is an obvious reference to the undercover agent she thought was the hitman who visited her house before supposedly killing EH.

Parton stopped her from talking (as he had before) and answered both concerns: "You don't have to worry about that, because he's, I'm going to tell you why, and you're going to, if you still want an attorney after this, that's fine, we'll respect it, we won't bother questioning you anymore." *Id.* He then introduced her to the agent who played the hitman. Regan immediately said, "I know . . . . Good, thank God, I told them to kill the truck; take the truck." *Id.*

Regan and the undercover agent then engaged in a fast-paced dialogue during which he told her he knew everything and knew she had been lying during the interview. *Id.* at 175–79; *see also* Gov't Video Clip 12. For her part, Regan again asked if EH was okay and tried to provide more information, but the undercover agent repeatedly cut her off while telling her to tell the truth. Tr. [126-1] at 175–79.

Parton tried a few times to stop the conversation between Regan and the undercover agent (which is more apparent on the video); he eventually succeeded. *Id.* at 177–79. He then reminded Regan of her right to an attorney, but she said repeatedly she wanted to talk. *Id.* He

also cut her off a few more times when she volunteered information because he was trying to go through the *Miranda* process again. *Id.* at 181. Parton eventually *Mirandized* Regan a second time, and she re-signed a waiver-of-rights form.

To begin the analysis, the Court finds that the exchange between Regan and the undercover agent was an interrogation.

> As the Supreme Court has explained, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*United States v. Arellano-Banuelos*, 912 F.3d 862, 866 (5th Cir. 2019) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

But by the time that interrogation occurred, it was permissible for two reasons. First, Regan never unambiguously invoked her right to counsel because her full statement withdraws the request without prompting. *Johnson v. Stephens* offers a good comparison. No. H-11-2466, 2014 WL 2882365 (S.D. Tex. June 25, 2014), *aff'd*, 617 F. App'x 293 (5th Cir. 2015). There, the defendant said, "I don't even want to talk no more until I get me a lawyer or something" but then continued speaking "[w]ithout pausing." *Id.* at *5. The court concluded that Johnson's request was ambiguous. *Id.*; *see also id.* at *6 n.5 (collecting cases where "inmate mentions his constitutional rights but then continues talking").

So too here. Regan certainly said, "I want an attorney." Tr. [126-1] at 173. But when the agent responded, "All right"—which was not interrogation—she immediately said, "I don't want that, I want to help you." *Id.* "[A] reasonable officer in light of the circumstances would

7

have understood only that [she] *might be* invoking the right to counsel." *Carrillo*, 660 F.3d at 922–24 (emphasis added). That's not enough.[1]

But assuming Regan's initial statement about wanting an attorney could be viewed in isolation, she waived her rights by initiating further conversation. "[A] defendant 'initiates' further communication with the police if [s]he has 'evinced a willingness and a desire for a generalized discussion about the investigation[.]' [Her] comment may not be 'merely a necessary inquiry arising out of the incidents of the custodial relationship.'" *Plazinich v. Lynaugh*, 843 F.2d 836, 838 (5th Cir. 1988) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983)).

Regan evidenced a willingness and a desire to talk. As noted, she said she did not want an attorney, asked whether EH was alive, and expressed her concerns because the hitman had been to her house. The agents addressed those questions. During that exchange, Parton reminded her of her rights and even told her to stop talking, yet Regan continued and repeatedly stated that she wanted to talk. She then re-signed the *Miranda* waiver. She waived her rights. *See United States v. Eligwe*, 456 F. App'x 196, 197–98 (4th Cir. 2011) (finding no unambiguous invocation and alternatively re-initiation by suspect who asked for counsel but kept talking); *Robertson v. Roberts*, 386 F. App'x 797, 804 (10th Cir. 2010) (finding no constitutional violation when every time defendant "stated his desire for an attorney, with his next breath, he would reveal information about the crime and continue talking without any prompting from officers"); *United States v. Wilson*, 567 F. Supp. 3d 398, 405 (W.D.N.Y. 2021) ("Even if Wilson's

---

[1] These facts are distinguishable from *Smith v. Illinois*, where the Supreme Court held that "an accused's postrequest responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel." 469 U.S. 91, 92 (1984). There was no continued questioning when Regan changed her mind and said she didn't want an attorney.

statements were construed as a revocation of his initial *Miranda* waiver, 'it was overridden by [his] subsequent decision to reinitiate the conversation' and by his continuing to converse with the officers.") (quoting *United States v. Gonzalez*, 764 F.3d 159, 166 (2d Cir. 2014)); *Stemple v. Workman*, No. 01-CV-166-GKF-PJC, 2009 WL 1561566, at *16 (N.D. Okla. June 3, 2009) ("Even if the second reference is deemed to have been an unambiguous and unequivocal invocation of his right to counsel, Stemple reinitiated communication with police by continuing to talk."), *aff'd*, 418 F. App'x 732 (10th Cir. 2011).

The only other reference to an attorney that Regan identifies in her motion came after Regan said she did not want an attorney but before Parton could re-present the waiver-of-rights form.

| | |
|---|---|
| ATF SA PARTON: | Okay, here's what I'm going to do, you said you wanted an attorney, that should you talk to an attorney. |
| MS. BRYAN: | It was, can pause and call . . . |
| ATF SA PARTON: | No ma'am. |
| MS. BRYAN | . . . I mean it[']s all everything that . . . |
| ATF SA PARTON: | But if you're willing to speak to us, I want to do another *Miranda*, because you have the right to an attorney. |

Tr. [126-1] at 181.  Nothing in this exchange reflects an unambiguous invocation of her right to remain silent, and it occurred as Regan repeatedly stated that she wanted to talk without an attorney.  The agent was merely covering his bases by getting her to re-sign the *Miranda* waiver.

In sum, Regan was repeatedly advised of her rights and never quit talking, even after she asked for an attorney, and even when the agents told her to stop.  There was no unambiguous request for counsel, and even if there was, she re-initiated conversation.  Her motion is denied, and the Government's motion is granted as to the right-to-counsel issue.

9

IV.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the reasons stated, the Government's motion [120] is granted as to the right-to-counsel issue; Regan Bryan's motion [124] is denied; her three motions for extensions [121, 122, 123] are granted; and the Court reserves its ruling on that portion of the Government's motion [120] regarding the *Bruton* issue.

**SO ORDERED AND ADJUDGED** this the 29th day of November, 2023.

> s/ *Daniel P. Jordan III*
> CHIEF UNITED STATES DISTRICT JUDGE