UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                CRIMINAL NO. 3:21-CR-17-DPJ-LGI

JOSHUA DRUID BRYAN

ORDER

Defendant Joshua Druid Bryan seeks a judgment of acquittal in this murder-for-hire case. Def.'s Mot. [164]. The Government has already conceded the motion as to Count I, and that count has been dismissed. *See* Gov. Mot. to Dismiss [176], Order [177]. The Court now denies Defendant's motion as to Counts II and III.

I.   Facts and Procedural History

Defendant and his sister Regan Bryan were charged in a three-count superseding indictment for their alleged participation in a murder-for-hire plot to kill their stepfather. Regan entered a guilty plea and later testified against Defendant at his trial. Defendant now renews his motion for judgment of acquittal, and this Order addresses Count II (conspiracy to commit murder for hire under 18 U.S.C. § 1958(a)) and Count III (murder for hire under § 1958(a)). The Government opposed the motion as to these counts, *see* Gov. Resp. [175], and Defendant filed no reply.

II.   Standard

Under Rule 29, the Court may set aside a jury's verdict of guilt if "the evidence is insufficient to sustain a conviction" of one or more of the offenses charged in the indictment. Fed. R. Crim. P. 29(a), (c). "The jury's verdict will be affirmed 'if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a

reasonable doubt.'" *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011) (quoting *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997)). "In assessing the sufficiency of the evidence, we do not evaluate the weight of the evidence or the credibility of the witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *Id.* (citing *Myers*, 104 F.3d at 78–79).

III.     Analysis

The jury found that Defendant violated § 1958(a) in two ways—by conspiring to commit murder for hire with his sister Regan (Count II) and by committing murder for hire (Count III). Under § 1958(a), it is a crime to

> use[ ] or cause[ ] another . . . to use . . . any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State . . . as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or [to] conspire[ ] to do so.

A.     Count II

Defendant makes three arguments for dismissing the conspiracy conviction. First, he says the Government failed to prove the proper *mens rea* under § 1958(a). According to him,

> The court in *Linehan* specifically held that the required mens rea for murder for hire is different and distinct than the required mens rea to commit a murder. ". . . the solicitation statute has its own mens rea, intent, and is not itself an attempt offense, nor does it require a prediate offense that is itself an attempt crime, and it does not incorporate a further mens rea requirement specific to attempt beyond the mens rea of intent that the element clause already requires.

Def.'s Mem. [165] at 4 (unaltered) (citing *United States v. Linehan*, 56 F.4th 693, 695 (9th Cir. 2022)).

That argument is hard to follow, but *Lineham* undercuts Defendant's point. There, the Ninth Circuit explained that 18 U.S.C. § 373 (which prohibits solicitation of a crime of violence) requires proof that the defendant solicited a crime that has "as an element the use, attempted use, or threatened use of physical force." *Linehan*, 56 F.4th at 699. The court concluded that

2

§ 1958(a) has no such element and, for that reason, cannot be a predicate offense to a § 373 conviction. *Id.* at 707. That's true, and that's why the Government conceded dismissal of Defendant's § 373 conviction in Count I. But it also means that the *mens rea* under § 1958(a) is not heightened as Defendant seems to suggest.

As noted, the statute applies when someone uses "any facility of interstate or foreign commerce, with intent that a murder be committed" or conspires to do so. 18 U.S.C. § 1958(a). The *mens rea* for a conspiracy conviction under § 1958(a) thus requires proof of the "defendant's knowing and voluntary participation in the agreement" to commit murder for hire. *United States v. Blackthorne*, 378 F.3d 449, 453 (5th Cir. 2004) (citation omitted). The court instructed the jury consistent with that law, and Defendant made no objection to the instructions. *See* Tr. [173] at 674.

So instructed, a reasonable jury could find that the Government met its burden when the evidence is viewed in the light most favorable to the verdict. Though not an exhaustive list, the jury heard this:

- Regan testified that around November 2020, she and Defendant discussed killing their stepfather, and Defendant encouraged her to ask one of her criminal friends "if they knew anybody that would handle the problem." Tr. [170] at 428.

- Defendant and Regan then spoke on December 8, 2020; the call was recorded on Regan's cellphone. *See* G-2. During the conversation, Regan told Defendant that Shane Terry, a recently released felon, was coming over. Defendant told Regan three times on the call to make a "proposal." Tr. [170] at 433. Regan understood that to mean ask Terry to help them murder their stepfather. *Id.* Regan mentioned the idea to Terry, but he informed the FBI and began recording his conversations with the siblings.

- On December 10, Defendant and Terry spoke in a parking lot; Terry was wired. *See* G-7(a). Terry asked Defendant for the go-ahead, and Defendant told him to do what he saw fit and that he (Defendant) would do everything in his power to see that it was fulfilled. *Id.* There are other equivocal statements during the conversation, but a reasonable jury could view them as Defendant trying to manipulate Terry into furthering the agreement.

3

- After that, Terry recorded a conversation with the siblings when they discussed alibis and how they would pay the hitman. *See* G-12. Defendant suggested that they could agree to deferred payments with interest.

- On December 30, Defendant met with Terry, and the conversation was videoed. *See* G-14. After discussing the murder-for-hire idea, Defendant wrote something on a piece of paper, showed it to Terry, then walked outside and burned it. *Id.* Terry testified that the message said, "Tell your boy to come on. I'll make sure he gets paid handsomely." Tr. [170] at 337. Defendant testified that it did not, Tr. [172] at 659, but a reasonable jury could easily reject Defendant's testimony and his explanation for burning the note. *See id.* at 638–39.

- On January 7, Regan met with Terry and the supposed hitman (undercover Agent Richard Zayas); the meeting was recorded. G-16. Similar to the meeting between Defendant and Terry on December 30, G-14, Regan wrote her responses to Zayas on paper, telling him that Defendant had given her instructions and that she wanted to communicate in writing. G-16. The notes were later destroyed, just like Defendant's note to Terry. Tr. [170] at 450. When Zayas read her notes, he gave further instructions on how the hit would transpire and explained to Regan what she would need to do to stop it.

- The final conversation with Defendant in evidence was between Defendant and Regan later that day. *See* G-49. In that recorded call on Regan's cellphone, they complained about their stepfather and the mounting legal disputes between him and them. Defendant said, "This is fucking over with, hopefully everything works out real fucking soon." *Id.* Regan then told him that Terry and the hitman visited her that day, and Defendant responded, "Well, I hope he has safe fucking travels." *Id.* He never told her to call it off.

A reasonable jury could find that Defendant knowingly and voluntarily agreed to commit murder for hire.

Defendant's next argument is also unclear. He seems to suggest that because § 1958(a) is not a crime of violence, the Government was required to at least prove that he "engage[d] in a substantial step toward the use of a violent physical force." Def.'s Mot. [165] at 4. Defendant offers no legal authority for that argument, and there is nothing in the statutory text supporting it. *Linehan* does touch this issue. There, the court approvingly quotes the Solicitor General's briefing to the Supreme Court that § 1958(a)

> require[s] only that a defendant travel in, or use a facility of, interstate commerce with the requisite criminal intent; it does not require that a defendant actually enter into a murder-for-hire agreement, that he carry out or otherwise attempt to

4

>accomplish his criminal intent, or that the contemplated murder be attempted or accomplished by another person.

Br. of United States at 9, *United States v. Grzegorczyk*, — U.S. —, 142 S. Ct. 2580 (No. 21-5967) (quotations and emphasis omitted), *quoted in Linehan*, 56 F.4th at 707.  But even if a substantial step is required, the evidence just summarized demonstrated many steps toward committing murder for hire.[1]

Defendant's final argument as to Count II asserts that there is no evidence he used a cellphone to further the conspiracy.  The statute applies if he used a cellphone—i.e., an interstate communications facility—or if he "cause[d] another" to do so.  18 U.S.C. § 1958(a).  When the Government searched Regan's cellphone, it discovered numerous telephone calls related to the murder-for-hire plot that Defendant encouraged and participated in.  For example, Defendant told Regan to make a "proposal" to Terry over Regan's cellphone.  *See* G-2.

After that, Terry recorded his cellphone calls with Defendant, including the one when they agree to meet in a parking lot.  *See* G-7a.  The conversation that followed was also recorded and included the comments encouraging Terry to go through with it.  *Id*.  *See also* G-13 (documenting cellphone conversation between Defendant and Terry agreeing to meet after Terry said he had "talked to [his] boy [purported hitman]" and wanted Defendant to "know what he said").  This evidence surpasses Rule 29.  The motion is denied as to Count II.

---

[1] Defendant never uses the term "overt act" in his argument, but older Fifth Circuit cases did require an overt act under § 1958(a)'s conspiracy provision.  *See, e.g.*, *Blackthorne*, 378 F.3d at 453. Those holdings are now doubtful because the Supreme Court found no such element in the similarly worded 18 U.S.C. § 1956(h).  *See Whitfield v. United States*, 543 U.S. 209, 219 (2005). The issue never arose at trial because the parties agreed to final instructions that did not include that element.  *See* Tr. [173] at 674.  Nor did Defendant make a similar argument in his Rule 29 motions at trial.

B.     Count III

Defendant offers one argument for setting aside the murder-for-hire conviction—that there was no evidence establishing the use of interstate commerce with intent to have an out-of-state hitman commit a murder in Mississippi.  Def.'s Mem. [165] at 5.  As he puts it, "Regan Bryan was the only person to ever hear the word[ ] 'Florida.'"  *Id*.  Defendant cites no authority for this argument, which is roughly the same as the jurisdictional argument he made in his Rule 29 motion at trial.  Tr. [172] at 668–69.  But he conceded then that the law favored the Government and that he was merely making a record.  *Id*. at 669.

The law does favor the Government.  In *United States v. Marek*, the Fifth Circuit considered a similar issue:

> We are satisfied that when § 1958 is read as a whole and viewed in context as part of the power of Congress to regulate and protect the instrumentalities of interstate commerce, even when the threat comes from intrastate activities, it becomes clear that the *facility*, not its use, is what must be "in interstate or foreign commerce." In the instant context, then, when a facility employed to advance murder-for-hire is in interstate or foreign commerce generally, the jurisdictional element of § 1958 is satisfied even though the particular *use* of the facility on the specific occasion in question is only *intra* state.  Thus, both (1) Marek's intrastate use of Western Union—a quintessential facility *in* interstate commerce—to transfer funds within Texas, and (2) Cisneros's international telephone calls, are sufficient to satisfy the jurisdictional element of § 1958, and—more importantly—that jurisdictional element is present in the statute through a valid exercise of congressional Commerce Clause power under the second *Lopez* category.

238 F.3d 310, 320 (5th Cir. 2001) (en banc) (footnote omitted).  That same year, the court applied *Marek* to cellphone calls discussing murder for hire, finding the "evidence is clearly sufficient to allow a rational jury to conclude beyond a reasonable doubt that [defendant] used a facility in interstate commerce as part of his conspiracy to commit murder-for-hire." *United States v. Miles*, 273 F.3d 1108, 2001 WL 1131862, at *2 (5th Cir. 2001) (unpub. op.).  The court also noted:  "That both parties to each telephone call were in Louisiana is, following our decision

6

in *Marek*, of no consequence." *Id.*  Finally, the *Miles* court also rejected the defendant's argument that the calls did not count because he did not initiate them.  *Id.*

Defendant has not demonstrated a basis for judgment of acquittal as to Count III; his motion is denied.

III.    Conclusion

The Court has considered all arguments presented.  Any not addressed here would not change the outcome.  Defendant's motion for acquittal [164] is denied.

**SO ORDERED AND ADJUDGED** this the 1st day of May, 2024.

                                           s/ *Daniel P. Jordan III*
                                           CHIEF UNITED STATES DISTRICT JUDGE